**FEDERAL DEPOSIT INSURANCE CORPORATION and Continental Illinois National Bank and Trust Company of Chicago**

v.

**WH VENTURE**

v.

**HALL MANAGEMENT CORPORATION, Hall Real Estate, Inc., and Hall Real Estate Group.**

Civ. A. No. 84–5673.

United States District Court, E.D. Pennsylvania.

April 15, 1985.

Arthur R. Littleton, Frank A. Labor, III, Morgan, Lewis & Bockius, John C. Murphy, Jr., Gen. Counsel, Daniel W. Persinger, Douglas H. Jones, Deputy Gen. Counsels, Philadelphia, Pa., for Federal Deposit Ins. Corp.

Judah I. Labovitz, Philadelphia, Pa., Richard Levy, Chicago, Ill., for Continental Illinois Nat. Bank & Trust.

Steven A. Arbittier, Philadelphia, Pa., for WH Venture.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is WH Venture's motion to dismiss the plaintiff, Federal Deposit Insurance Corporation (FDIC) as a party to this action. The defendant seeks to challenge the statutory validity of the FDIC's action to infuse $4.5 billion in permanent financial assistance to the ailing and financially troubled Continental Illinois National Bank and Trust Company of Chicago. Upon careful consideration of the parties' legal positions, I have concluded that WH Venture lacks standing to litigate the validity of the FDIC action and their motion will be denied.

## PROCEDURAL HISTORY

This action was originally commenced in the Court of Common Pleas of Philadelphia County by Continental Bank to foreclose on a mortgage issued to WH Venture. In June, 1981, Continental Bank entered into a construction loan agreement with the defendant. The loan was used to develop high rise condominium units in a prime center city Philadelphia location. It appears from the pleadings and answers thereto that the defendant failed to meet the principal and interest payments when they came due in June, 1984. One month later, Continental instituted action in state court to foreclose on the property. W.H. Venture answered the complaint asserting, *inter alia*, that they had entered into various oral agreements that modified the express terms of the construction loan agreement. This non-performing loan to WH Venture was but one of many troubled loans that totaled almost $4.5 billion dollars contained in the bank's loan portfolio. Continental Bank was in severe financial difficulty and the prospect of its imminent demise sent shock waves through the world financial community. Foreign governments began to withdraw billions in deposits from the bank and a severe liquidity crisis developed.

In May 1984, in a joint effort, the FDIC, the Federal Reserve Board and the Comptroller of the Currency injected new capital into the bank thereby stabilizing it. Realizing their effort was but a stop-gap measure, these three parties began to work on a permanent assistance plan to aid the ailing bank. In July 1984, the FDIC adopted a resolution providing for $4.5 billion dollars in permanent financial assistance to Continental Bank. Pursuant to this agreement, the bank would transfer "non-performing loans" with a book-value of $4.5 billion in exchange for the bank's outstanding debt to the Federal Reserve Bank of Chicago. In addition the FDIC infused $1 billion in new capital into the bank. In accordance with this agreement, in September 1984, Continental Bank assigned the WH Ven-

ture loan to the FDIC. Shortly thereafter, the FDIC petitioned to join as a party in interest the mortgage foreclosure proceeding in state court. After the petition was granted, the FDIC removed the suit to federal court pursuant to 12 U.S.C. § 1819.[1]

WH Venture contends that the assignment of its loan was not valid because the FDIC exceeded its statutory authority by the manner in which it transacted the permanent financial assistance program.

If the assignment was not valid, the FDIC should not be a party to the action and this court would be without jurisdiction over the subject matter of this suit. A more fundamental issue first needs to be resolved and that is whether WH Venture has standing to challenge the legality of the FDIC's permanent assistance plan.

## DISCUSSION

■ In order for WH Venture to invoke the "judicial power" of this court, they must first prove they have standing to challenge the legality of the FDIC's assistance program. The doctrine of standing assures that the Article III "case or controversy" requirement is satisfied and thus the parties appear before the court having an actual or threatened injury capable of judicial redress. *Frissell v. Rizzo*, 597 F.2d 840, 843 (3d Cir.1979); *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Essentially, the standing doctrine works to prevent the federal judiciary from being converted into a "judicial version of college debating forum." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982).

■ The *Valley Forge College* decision is the United States Supreme Court's most recent pronouncement on the standing issue. The Court held that in order for the party to assert standing, they must show that (1) they have suffered some actual injury or threatened harm; (2) which can be traced to the challenged action, and (3) which is capable of judicial redress. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758.

■ Applying this criteria to the WH Venture claim, I find that they fail to meet the requirements and are without standing to challenge the validity of the financial assistance program.

WH Venture contends that it suffered an "injury" when its loan was assigned to the FDIC because of a federal law which works to divest WH Venture's right to assert certain affirmative defenses against the FDIC. 12 U.S.C. § 1823(e) reads in pertinent part:

**(e) Agreements against Interests of Corporation**

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation *unless such agreement (1) shall be in writing*, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank. (emphasis added)

Its purpose is to protect the FDIC from unverifiable verbal agreements to alter or extinguish the contractual rights vested in the bank by way of its written agreement with the debtor. The FDIC has not yet asserted this section against WH Venture, but it is apparent that if they choose to do so the defendant will be precluded from introducing proof of any oral modification

---

**1.** 12 U.S.C. § 1819 reads in pertinent part:
All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; ...

of the loan agreement as a defense to the foreclosure.

Naturally, any time a party to an action loses a potential defense, they can be said to be harmed. It is not, however, "harm" in a general sense that the law is concerned with, rather it is a specific legal harm that the court takes cognizance of in its grant of standing. The law, as enacted by Congress, is presumed to be known by WH Venture. *Raley v. Ohio*, 360 U.S. 423, 425, 79 S.Ct. 1257, 1259, 3 L.Ed.2d 1344 (1959). Once it entered into the loan agreement with an FDIC lending institution, it knew that only a written agreement modifying the terms could withstand a § 1823(e) defense by the FDIC. The fact that this verbal agreement cannot be resurrected to defeat the FDIC's interest in the assigned loan was the very result *Congress intended.* I do not see how this result, which is the natural consequence of a congressional enacted law, can be said to illustrate the "harm or injury" suffered by the defendant. The "harm" that may result to WH Venture does not come from the assignment of the loan but rather from the defendant's own failure to place in writing the alleged modifications agreed to by the parties. WH Venture has suffered no legal harm by the imposition of Section 1823(e). Defendant has no more suffered a "legal harm" than has an unsecured creditor who petitions this court to enjoin a debtor from filing for bankruptcy because the creditor would be injured. Clearly, the court could not enjoin that action by law, yet the unsecured creditor is harmed by the filing since the automatic stay prevents him from securing his interest. His status as an unsecured creditor is an infirmity to collecting his debt. While harm in its most broadest sense can be said to have occurred, it is not a legal harm that is recognized under the law. Just as Congress intended to protect certain interests of the debtor, the interests of the FDIC are protected through federal banking laws as enacted by Congress. Any "harm" that WH Venture alleges, occurred not from the transfer of the loan to the FDIC, but from its failure to secure in writing the modifica-tion as required by § 1823(e). Even assuming, arguendo, that a legal harm is present, it did not result directly from the challenged action, which is the loan transfer. The harm flows directly from the defendant's failure to protect its interest as required by federal law, 12 U.S.C. § 1823(e).

■ The defendant raises another legal reason for allowing it to challenge the validity of the loan transfer by citing the well settled rule of law that when suit is brought against a debtor (WH Venture) by a stranger to the contract (FDIC), the debtor is entitled to proof that the plaintiff is the owner of the claim. This, of course, prevents the debtor from being subject to the original owner of the debt (Continental Bank) on the same liability *in the event* there was no actual assignment. *Produce Factors Corporation v. Brown*, 197 Pa.Super. 626, 179 A.2d 919, 921 (1962); *Brown v. Esposito*, 57 Pa.Super. 147, 42 A.2d 93, 94 (1945). Thus, an assignee of a contractual right must plead and prove the validity of his ownership claim.

The purpose of making the plaintiff prove the validity of the ownership of the debt is to protect the debtor from multi-liability on the same instrument. Fed.R. Civ.P. 17 provides that the action shall be prosecuted in the name of the real party in interest. Because the only two interested parties in this instant action are before the court, WH Venture is not placed in danger of having to defend its liability on the loan agreement in a subsequent action.

If at the close of trial the defendant believes that the FDIC has not shown it was assigned the loan agreement by the Bank, that issue may be poised to the jury by way of special interrogatories. If, on the other hand, the FDIC asserts ownership and the Bank does not contest that claim, then I see no danger of subsequent litigation being instituted against WH Venture by the Bank on the liability issue of the debt. The issue of ownership is a far cry from the issue of whether the FDIC may infuse capital into a failing bank.

In the end, the issue remains whether WH Venture has suffered a legal harm which can be traced to the challenged act. I think it has not and accordingly, I conclude that its motion to dismiss will be denied. The remaining motions to compel certain discovery and for an extension of time to file briefs are rendered moot.