**Joseph BRITTON, Plaintiff–Appellee,**

**v.**

**CO–OP BANKING GROUP, Defendant.**

**Jeff Liebling, Defendant–Appellant.**

**No. 91–16851.**

United States Court of Appeals, Ninth Circuit.

Submitted April 14, 1993 *.

Decided Sept. 1, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34–4.

Jeff Liebling, pro se.

William P. Torngren, Andrea M. Miller, David C. Adams, Bartel, Eng, Miller and Torngren, Sacramento, CA, for appellee.

Before: CANBY, BRUNETTI, Circuit Judges, and ROBERT E. JONES.**

ROBERT E. JONES, District Judge:

The issue on appeal is whether Jeff Liebling, a non-signatory to a contract entered

into by a company he later purchased, may invoke the contract's arbitration clause.

We find that Liebling may not invoke the contract's arbitration clause because: (1) Plaintiffs [1] are not estopped from claiming Liebling has no standing to compel arbitration; (2) Liebling was not a third party beneficiary or successor in interest to the contract; and (3) Although Liebling became an agent, officer and employee of the original contracting party, none of his allegedly wrongful acts arose out of or were related to the contract.

The decision of the district court is affirmed.

*Facts and proceedings below*

This appeal is part of a class action alleging that defendants perpetuated a securities fraud scheme by selling a fraudulent tax shelter investment and that Liebling engaged in fraudulent activity after the initial sales. Plaintiffs signed a contract for the allegedly fraudulent securities with Gold Depository and Loan Company ("GDL"). This contract contained an arbitration provision. Liebling, a non-signatory to the contract who later bought GDL, demanded arbitration but the plaintiffs refused. His motion to compel arbitration was denied by the district court, which found that he had waived arbitration. Liebling appealed, and while his appeal was pending, the district court entered a default judgment against him as a discovery sanction.

This Court reversed. *Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990). The *Britton* panel, which chronicled the facts and proceedings in this case in more detail, concluded that Liebling had not waived his right to compel arbitration. The panel also found that the district court had not addressed the threshold issue of Liebling's standing to compel arbitration and remanded the case to the district court for further determination and fact-finding on that issue. The panel concluded that if Liebling does not have the right to have this dispute submitted to arbitration, the "default

---

** Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

1. We refer to appellees as "plaintiffs" in this opinion.

judgment" may stand. On the other hand, if Liebling proves to be correct on the arbitration question, the "default judgment" will have to be set aside.

The district court, on remand, concluded that Liebling lacked standing under the contract to assert a right to arbitrate and that the "default judgment" therefore remains in effect. Liebling timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) and 9 U.S.C. § 15(a)(1)(A), (B).

*Standard of review*

■ The denial of a motion to compel arbitration is reviewed *de novo*. *Pipe Trades Council, Local 159 v. Underground Contractor's Ass'n,* 835 F.2d 1275, 1273 (9th Cir. 1987).

*Discussion*

*Plaintiffs are not estopped from claiming Liebling has no standing to compel arbitration.*

■ Liebling argues that judicial estoppel should bar the plaintiffs from denying the allegations in their complaint regarding his status as an agent or successor in interest of GDL. We disagree. This circuit has declined to adopt either the majority or minority view of judicial estoppel. *See, e.g., Yanez v. Broco,* 989 F.2d 323 (9th Cir.1993).

This court recently described the two competing views of judicial estoppel as follows:

> Under the majority view, judicial estoppel does not apply unless the assertion inconsistent with the claim made in the subsequent litigation "was adopted in some manner by the court in the prior litigation." [*Stevens Tech. Services, Inc. v. SS Brooklyn,* 885 F.2d 584, 588 (9th Cir.1989).] Under the minority view, judicial estoppel can apply even when a party was unsuccessful in asserting its position in the prior judicial proceeding, "if the court determines that the alleged offending party engaged in 'fast and loose' behavior which undermined the integrity of the court." [*Stevens,* 885 F.2d at 589.]

*In re Corey,* 892 F.2d 829, 836 (9th Cir.1989).

Under the majority view, Liebling's estoppel argument fails, simply because he has neither alleged nor proven that the court below ever adopted plaintiffs' prior position that he was liable as agent or employee of GDL. To the contrary, the granting of a default was a sanction for discovery violations, unrelated to the allegations in the complaint.

Under the minority view, it is a closer question, but the argument still fails. Plaintiffs did not truly obtain relief by "asserting and offering proof to support one position" and then contradict themselves to establish a second claim. *Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). Again, they obtained relief via Liebling's refusal to comply with the discovery order.

Neither do we consider plaintiffs to be playing "fast and loose" with the courts. This characterization is reserved for more egregious conduct than just "threshold" inconsistency, *Yanez, supra,* especially where, as here, the complainant has not been prejudiced by the inconsistency.

*Liebling did not have standing to compel arbitration.*

■ Liebling contends that he has standing to enforce the contract's arbitration clause for one or more of three reasons: (1) he is a third party beneficiary of the contract; (2) he is a successor in interest to the contract; or (3) he is an agent, officer, and employee of GDL.

■ The right to compel arbitration stems from a contractual right. *Britton,* 916 F.2d at 1413. That contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. *Lorber Industries of California v. Los Angeles Printworks Corp.,* 803 F.2d 523, 525 (9th Cir.1986). An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration, *E.E.O.C. v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1543, n. 2 (9th Cir.1987) (citing *Lorber*).

With that framework in mind, the following facts regarding the relationship between GDL, plaintiffs and Liebling become pivotal:

Defendant GDL allegedly sold marine dry cargo containers and then acted as an agent for purchasers in leasing those containers. According to plaintiffs, GDL was sued as a principal actor in the alleged securities fraud scheme. Eventually, plaintiffs obtained an order of default against GDL, but never proceeded to judgment.

According to Liebling's motion to intervene, he is an international business consultant and the sole proprietor of International Business Services ("IBS"). In May, 1985, he claims he was offered a seat on the board of USA/GDL, a California corporation that later acquired GDL. During the summer of 1985, USA/GDL hired Liebling, doing business as IBS, to serve as its representative agent. In September, Liebling/IBS was retained to handle contacts with investors in GDL's allegedly fraudulent container program. At that time, Liebling relates:

> I knew almost nothing of GD & L's past business history or details regarding the Program except was told an IRS summons enforcement action was being fought (supposedly) to protect the privacy rights of program investors ...

He says he learned of allegations of wrongdoing in October, 1985, and as he learned more facts he became suspicious about whether his supposed job—"to protect GD & L's goodwill by helping [p]rogram investors"—was the true motive of USA. He continues:

> By late November my suspicions that both the investors and the board were being screwed seemed true. In the belief that GD & L could be helpful to investor's interest if it was in friendly hands, and with an eye to re-establishing GD & L's commercially valuable goodwill, I engineered a necessarily "hostile takeover."

He claims to be "president, board and shareholder" of GD & L. Documentation proving his ownership includes a sales contract signed by Liebling and an officer of USA-GDL on Nov. 25, 1985. Plaintiffs' complaint against Liebling (reprinted below) charges him with acts starting in June, 1985 and continuing through 1987.

The original sale and leasing contracts GDL entered into with various plaintiffs contained the following arbitration clause:

> Any controversy or claim *arising out of or relating to this Agreement or the breach thereof,* shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof. (Emphasis added.)

As the district court noted, this arbitration clause is broad on its face, and in fact, it is routinely used in many securities and labor agreements to secure the broadest possible arbitration coverage. However, as explained above, because Liebling was not a party to the agreement, he must fit into one of the three categories that follow in order to invoke the right to arbitrate.

1. *Was Liebling a third-party beneficiary to the contract?*

Courts have held that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986).

■ If the parties to the contract had no intention to benefit a third party, that third party has no rights under the contract. *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 440, n. 13 (9th Cir.1979) (citing *Martinez v. Socoma Cos., Inc.,* 11 Cal.3d 394, 113 Cal.Rptr. 585, 521 P.2d 841 (1974)). Liebling offers declarations that he believes GDL officers and others connected with the company meant for the arbitration clause to be very broad and allow invocation by employees and other third parties. However, he has offered no evidence that that was actually the parties' intent.

As stated above, the law requires a showing that the *parties to the contract* intended to benefit a third party. Liebling has made no such showing, as the district court noted, and accordingly has failed to establish that he was a third-party beneficiary under the contract.

2. *Was Liebling a successor in interest to the contract?*

■■■ An assignee of a contractual right must prove the validity of his ownership claims. *Federal Deposit Ins. Corp. v. WH Venture*, 607 F.Supp. 473, 476 (E.D.Pa.1985). Additionally, general contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts. *See generally Restatement (Second) of Contracts*, § 317(1) (1981) ("[a]n assignment of a right is a manifestation of the assignor's intention to transfer it"); *id.* at § 324 ("[i]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person"). A contract provision specifying such is evidence of such an intent, of course.

The sales contract between IBS and GDL, which provides a purchase price of $10, does not contain language that could be considered an effective assignment of rights specified in the container contracts.

Indeed, the plain language of the contract indicates that the parties had just the opposite intent: that USA–GDL would defend any lawsuits related to the container program. In analyzing whether or not Liebling was a true successor in interest, the district court considered relevant contract clauses and found that the intent of IBM and USA–GDL was that USA would defend all lawsuits. The relevant clause reads:

> (2) [USA agrees to] strictly abide by all lawful obligations made by it in the GDL acquisition agreement dated April 29, 1985, except for those specifically and expressly assumed by IBS in this contract, especially to defend against all law suits.[2]

(CR 833 Ex. A.)

An additional clause specifies that Liebling will not be responsible for any "debts, obligations, defenses and liabilities" of GDL incurred prior to the date of the sale contract. As the district court concluded:

Because Liebling did not succeed to the obligations, defenses and liabilities of GD & L, and because USA–GDL specifically agreed to defend all lawsuits, Liebling is not a successor in interest or an assignee for purposes of standing to enforce GD & L's contractual arbitration clause.

We agree that Liebling is not a successor in interest to the contract for purposes of standing to compel arbitration.

3. *Is Liebling within a class of agents intended to benefit from the arbitration clause?*

■■■ Here Liebling is on stronger ground. He claims that from May to December 1985, he had an "ever increasing active role in the activities of GD & L as its corporate agent and as an officer and director." He says his work included:

> a broad range of tasks arising from the problems plaintiffs were having would *in connection with the contract* such as investigating and informing plaintiffs of the factual and legal situation, acting as liason [sic] with plaintiffs attorneys and accounts, protecting plaintiffs interests regarding the IRS ... and much more.

(Emphasis added). On remand the district court restricted review to Liebling's sale of investments to plaintiffs and ruled Liebling's agency theory failed because, "Liebling has presented no evidence that he, as agent of GDL, sold investments to plaintiffs." The district judge cramped his review too tightly. He should have examined any acts of Liebling as an agent that arose from the contract. We now undertake to do so because there is no factual dispute on this issue.

As mentioned, the first amended complaint filed by plaintiffs, who are now trying to defrock Liebling as an agent of GDL, alleged that Liebling "sought to profit from the events alleged in this complaint and from the class members." The complaint further states:

> On June 3, 1985 he became an officer and director of USA–GDL, INC. and, in those

---

**2.** The district court noted that the proper interpretation of the phrase, "especially to defend against all law suits," appears to be that it modifies the first clause of the sentence, "to strictly abide by all lawful obligations," etc.

capacities, accepted the resignations of the other board members of USA–GDL, INC. On June 18, 1985, LIEBLING formed the Investors Assistance and Restitution Corporation ("IARC"). Later, he sent letters to class members soliciting monies from them to join IARC and for copies of documents and indicating that he was seeking out a law firm to represent the class members. On February 1, 1986, LIEBLING sent a newsletter to class members in which he solicited additional monies, suggested that class members not start or pursue lawsuits against salespersons who sold the securities described in this complaint, and implied that he had arranged with a law firm to represent the class members' interests. Between June 3, 1985, and February 1, 1986, LIEBLING mailed 4 letters to the class members throughout the United States; in each letter, he solicited monies and implied that he was acting to assist class members. During the same time frame, LIEBLING acquired ownership of GOLD DEPOSITORY & LOAN CO., INC. and its assets for no consideration, on March 5, 1986, was retained by CO–OP INVESTMENT BANK LTD. to provide security and consulting services and thus purported to be assisting the class members and some defendants at the same time [sic]. On June 18, 1986, LIEBLING mailed another newsletter to class members soliciting more monies and advising that those failing to join IARC by July 7, 1986, might forfeit their rights to receive restitution payments. On March 2, 1987, LIEBLING sent a similar letter to class members. Based on information from newsletters and class members, plaintiffs believe that LIEBLING received monies from class members for services to be provided to them and for membership in several groups which he formed including IARC, "The Legal Action Group," "The GD & L Investors Group" and "The Tax Assistance Group." Based on a letter dated April 7, 1986, from LIEBLING to CO–OP INVESTMENT BANK LTD., plaintiffs believe LIEBLING was an agent of some other defendants. By virtue of his conduct, LIEBLING joined and participated in the conspiracy, plan or scheme as early as June 1985 and has carried on that conspiracy, plan or scheme by discouraging class members from pursuing their legal remedies and by purporting to pursue their remedies when in truth and in fact he was not.

Significantly, plaintiffs allege that the operative time for these acts was starting in June, 1985. Liebling presented an affidavit documenting that he became an officer and director of GDL in May, 1985, and later that same year bought the company.

Plaintiffs do not present any rebuttal evidence to Liebling's factual proffer and the district court made no factual findings to contradict Liebling's role as director, agent and employee of GDL. Thus, we accept Liebling's assertion that he was an agent, officer and employee of GDL, starting in May and running through the end of the operative period, for acts, if any, arising under the contract.

That leads us to the key question: Did any of Liebling's alleged wrongdoing as agent, officer or employee of GDL during this alleged period of time relate to or arise out of the contract containing the arbitration clause?

Plaintiffs' only contact with GDL appears to have been through the container lease investments, but that does not answer the key question. The only relevant acts charged against Liebling are set forth in the complaint and none of them seek to impose liability from the contract. In abbreviated form, the allegations are essentially as follows:

(1) He sent letters to class members soliciting money to join an investors' assistance group;

(2) He suggested class members not start or pursue law suits against salespersons who sold the securities under the contract;

(3) He sent letters to class members soliciting monies and implied he was acting to assist them;

(4) He bought GDL to provide consulting services to class members; and

(5) He discouraged class members from pursuing their remedies by purporting to pursue their remedies when in fact he was not.

The sum and substance of these allegations are that he in some way attempted to defraud the investors into not pursuing their law suits against the persons who originally sold the securities under the contract. These acts are subsequent, independent acts of fraud, unrelated to any provision or interpretation of the contract. They simply do not impose any contractual liability, vicariously or otherwise, upon Liebling. As such, we find that Liebling has no standing to compel arbitration, even though he was an agent, officer and employee of GDL during its later months of existence.

*Conclusion*

We conclude that the district court was correct in determining that Liebling lacked standing to enforce the arbitration clause. Accordingly, we affirm the district court's order denying Liebling's motion to compel arbitration.

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting:

The majority holds that the acts Liebling allegedly committed were "unrelated to any provision or interpretation of the contract" between plaintiffs and GDL. As a result, it finds that Liebling lacks standing to invoke the arbitration provision in that contract. The panel's interpretation ignores contemporary federal principles on the issue of arbitrability, and its erroneous conclusion proves fatal to an otherwise well-reasoned opinion. Accordingly, I dissent.

The Supreme Court has emphasized repeatedly the strong federal policy in favor of arbitration:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986), *quoting Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The balance of this presumption is the principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353; *Southern California Dist. Council of Laborers v. Berry Constr.,* 984 F.2d 340, 343 (9th Cir.1993).

We are not free to disregard the presumption in favor of arbitration and weigh the arbitrability of this dispute on an even scale. Because I believe the arbitration clause in this case is unquestionably "susceptible of an interpretation that covers the asserted dispute," I would follow the Court's mandate and direct the matter to arbitration.

The majority recognizes that the arbitration clause in this case is a broad one. It errs, however, in ignoring the settled consequence of that breadth. The clause provided as follows:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration ... and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Memorandum Opinion and Order at 3.

The majority concludes that the arbitration clause does not cover the instant dispute because Liebling's actions, which formed the basis for the complaint, were "subsequent, independent acts of fraud, unrelated to any provision or interpretation of the contract," and because "[t]hey simply do not impose any contractual liability, vicariously or otherwise, upon Liebling." The scope of this clause, however, is not restricted to contro-

versies relating to interpretation or performance of the contract itself.

We travelled this ground in *Mediterranean Enterprises v. Ssangyong*, 708 F.2d 1458 (9th Cir.1983). In that opinion, we explained the "significant" difference between broad arbitration clauses, which direct to arbitration disputes "arising out of or relating to [an] agreement," and clauses limited to disputes or controversies "under" or "arising out of" the contract. *Id.* at 1464. The *Ssangyong* court had "no difficulty" finding that the latter type of clause "is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself." *Id.* The broader clause, like the one we interpret today, is not so limited.

The majority ignores this distinction. It attributes to our broad clause the effect we have expressly described for the "much narrower" clause which omits the "or relating to this agreement" language. *See id., quoting Michele Amoruso e Figli v. Fisheries Development Corp.,* 499 F.Supp. 1074, 1080 (S.D.N.Y.1980). The majority's construction cannot stand in the shadow of *Ssangyong.*

I would reverse the district court's determination that Liebling lacks standing to invoke the arbitration provision in the GDL contract and direct the court to grant Liebling's request for an order to arbitrate pursuant to that agreement. I would also direct the district court to set aside its earlier order of default in accordance with our prior decision in this case. *Britton v. Co–Op Banking Group,* 916 F.2d 1405, 1414 (9th Cir.1990). I respectfully dissent.