BOSTON TELECOMMUNICATIONS GROUP, INC. and Roderick Marshall, Plaintiffs,

v.

DELOITTE TOUCHE TOHMATSU; Robert Wood; George A. Mainas; Consolidated Global Cable Systems, Inc.; Deloitte & Touche Slovakia, S.R.O.; Deloitte & Touche, Eood; Deloitte & Touche Czech Republic, B.V.; and Deloitte & Touche Central Europe. Defendants.

No. C 02–5971 JSW.

United States District Court, N.D. California.

Aug. 7, 2003.

 

 

 

 

 

 

 

Brian H. Lamkin, Edwards & Angell LLP, Boston, MA, David C. Phillips, Phillips & Erlewine LLP, San Francisco, CA, Mark B. Dubnoff, Edwards & Angell, LLP, Steven M. Cowley, Edwards & Angell LLP, Boston, MA, for Boston Telecommunications Group Inc., Roderick Marshall, Plaintiffs.

John D. van Loben Sels, Gibson Dunn and Crutcher LLP, Palo Alto, CA, Michael J. Dell, Kramer Levin Naftalis & Frankel LLP, New York City, Timothy K. Roake, Gibson Dunn & Crutcher LLP, Palo Alto, CA, Frederick S. Fields, Coblentz Patch Duffy & Bass, LLP, Susan K. Jamison, Coblentz Patch Duffy & Bass LLP, Zuzana J. Svihra, Coblentz Patch Duffy & Bass, LLP, San Francisco, CA, George S. Trevor, Trevor & Weixel LLP, James V. Weixel, Jr., Trevor & Weixel LLP, Corte Madera, CA, for Deloitte Touche Tohmatsu, Robert Wood, George A. Mainas, Consolidated Global Cable Systems Inc., Deloitte & Touche Central Europe, Deloitte & Touche Czech Republic, B.V., Deloitte & Touche EOOD, Deloitte & Touche Slovakia, S.R.O., Defendants.

## ORDER GRANTING DEFENDANTS GEORGE A. MAINAS AND CONSOLIDATED GLOBAL CABLE SYSTEMS, INC.'S MOTION TO DISMISS IN FAVOR OF ARBITRATION

WHITE, District Judge.

Now before the Court is the motion by defendants Consolidated Global Cable Systems, Inc. ("CGCS") and George A. Mainas ("Mainas") to dismiss in favor of arbitration or, alternatively, to dismiss for forum non conveniens. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS CGCS and Mainas' motion to dismiss in favor of arbitration in British Columbia, Canada under the terms of their partnership agreement executed as of August 22, 1996.

### FACTUAL BACKGROUND

Plaintiff Roderick Marshall ("Marshall") is the sole shareholder of plaintiff Boston Telecommunications Group, Inc. ("BTG"), a Delaware corporation with a principal place of business in Boston, Massachusetts

(collectively "Plaintiffs"). (Am. Compl. at ¶¶ 1–2.) Mainas is the president of CGCS, a Canadian corporation organized under the laws of British Columbia. (Mainas Decl. ¶ 4.) On December 31, 2002, Plaintiffs filed this action, alleging fraud and other wrongdoing that stemmed from their investment in an unsuccessful venture to purchase and resell interests in two Bulgarian cable television companies (the "Bulgarian Venture"). Plaintiffs named eight defendants, including CGCS, Mainas, Deloitte Touche Tohmatsu, and Robert Wood ("Wood"), managing partner of the Deloitte Touche Tohmatsu member entities in Slovakia and Bulgaria. (Opp. Br. at 1.)

Plaintiffs contend that Wood and Mainas, individually and as respective agents for Deloitte Touche Tohmatsu and CGCS, made a series of representations to Marshall about the Bulgarian Venture. (Opp. Br. at 1; Am. Compl. ¶¶ 31–49.) Plaintiffs allege that, in reliance on Wood and Mainas' representations, Marshall agreed to form BTG for the purpose of establishing the Bulgarian Venture with a CGCS subsidiary, Global Satellite Transmission Services ("GSTS").[1] (Opp. Br. at 3; Am. Compl. ¶ 49.) Plaintiffs further allege that they were induced to invest $550,000 in the Bulgarian Venture, which they contend was a sham and resulted in the loss of their investment. (Opp. Br. at 1; Am. Compl. ¶¶ 30–102.) As to Mainas and CGCS, Plaintiffs have asserted a California state law cause of action for fraud, alleging that CGCS and Mainas misrepresented and failed to disclose material facts surrounding their efforts to acquire and develop the Bulgarian cable television entities in connection with the Bulgarian Venture. (Br. at 2; Compl. ¶¶ 102–109.)

Mainas and CGCS brought the instant motion to dismiss in favor of compelling arbitration in Canada. They contend that Plaintiffs' claims against them are subject to an international commercial arbitration agreement, and that, under 9 U.S.C. section 206, this Court does not have subject matter jurisdiction over those claims. (Br. at 1.) Mainas and CGCS rely on a written agreement, executed as of August 22, 1996, governing the partnership between BTG and GSTS for the purposes of the Bulgarian Venture ("Partnership Agreement"). (Br. at 2; Mainas Decl. at Exh. A at 1.)

The Partnership Agreement was negotiated in Vancouver, British Columbia and prepared by a Canadian law firm retained by BTG. (Br. at 3.) It was executed by Stuart W. Rogers, a director of CGCS and GSTS, and by Marshall, on behalf of BTG. (Br. at 3; Mainas Decl. at Exh. A at 10.) Article 11 of the Partnership Agreement stipulates that the agreement is to be constructed under the laws of British Columbia:

> Construction: This Agreement for all purposes shall be constructed under and governed by the laws of British Columbia, Canada; and, except as otherwise provided herein, the Partnership and this Agreement and the rights and liabilities of the Partners hereunder shall be governed by the laws of British Columbia, Canada.

(Mainas Decl. at Exh. A at 8.) With respect to arbitration, Article 11 of the Partnership Agreement provides:

> Disputes: Any dispute arising out of the interpretation of this Agreement or with respect to the conduct of the Partnership business shall be settled by arbitration by a single arbitrator appointed in accordance with the rules of the *British*

---

1. GSTS is a Canadian corporation organized under the laws of the Yukon Territory. (Mainas Decl. ¶ 4.)

*Columbia Arbitration Act* applicable to commercial transactions then in effect, the decisions of the arbitrator will be final and binding on the parties and judgement upon award or decision rendered by the arbitrator may be entered in any court having jurisdiction thereof. (Mainas Decl. at Exh. A at 9.)

Plaintiffs dispute that Mainas and CGCS can compel them to submit to arbitration. Plaintiffs first contend that Mainas and CGCS have failed to establish the validity of the Partnership Agreement because they have not presented evidence that the Partnership Agreement was accepted for filing by the Vancouver Stock Exchange.[2] (Opp. Br. at 7.) Plaintiffs also argue that neither Mainas nor CGCS are partners to the Partnership Agreement because the agreement defines only BTG and GSTS as partners and, by its terms, excludes third party beneficiaries.[3] (Opp. Br. at 4–5). Plaintiffs lastly contend that, even if the Partnership Agreement is valid, their claims do not fall within the scope of its arbitration provisions. (Opp. Br. at 6.)

## ANALYSIS

### A. Legal Standard Governing Referral to Arbitration Pursuant to International Arbitration Agreements.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (1970) ("Convention"), governs the recognition of international arbitration agreements. Both the United States and Canada are signatories to the Convention. *Id.* Article II of the Convention requires courts of signatory countries to recognize written arbitration agreements and "at the request of one of the parties, [to] refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." 21 U.S.T. 2517, Article II §§ 1–3.

The Convention has been ratified at Chapter II of the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. §§ 201–208. Section 201 of the Arbitration Act requires courts of the United States to enforce the provisions of the Convention for arbitration agreements falling under the Convention. Section 202 provides that "[a]n arbitration agreement ... arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. Pursuant to section 206 of the Arbitration Act, a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. at § 206.

 "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The court must make this determination by applying the federal substantive law of arbitrability. *Id.* (citations omitted). The federal substantive law of arbitrability establishes a clear federal policy favoring arbitration. *See, e.g., Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96

---

**2.** The Partnership Agreement stipulates that the agreement is subject to acceptance for filing by the Vancouver Stock Exchange. (Mainas Decl. at Exh. A at 10.)

**3.** The Partnership Agreement provides: "Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the Partners, any rights or remedies hereunder or by reason hereof." (Mainas Decl. at Exh. A at 9.)

L.Ed.2d 185 (1987) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

■ As with any contract, the parties' intention to arbitrate controls. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477 (9th Cir.1991). Although a party cannot be required to arbitrate a claim that it has not agreed to arbitrate, courts are to construe arbitration agreements broadly in favor of coverage. *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648–50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927. "The standard for demonstrating arbitrability is not a high one." *Republic of Nicaragua*, 937 F.2d at 475. Especially in the case of international arbitration, courts are to give "full effect" to the "most minimal indication of the parties' intent to arbitrate." *Id.* at 478.

■ Upon finding that the parties agreed to arbitrate, "a district court has little discretion to deny an arbitration motion, since the [Arbitration] Act is phrased in mandatory terms." *Id.* at 475; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that the Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Therefore, the role of the court is "directly limited to determining arbitrability and enforcing agreements to arbitrate." *Republic of Nicaragua*, 937 F.2d at 478. The merits of the claim and any defenses must be left to the arbitrator. *Id.*

## B. The Scope of the Partnership Agreement's Arbitration Clause Encompasses Plaintiffs' Claims.

■ Article 11 of the Partnership Agreement requires that "any dispute arising out of the interpretation of this agreement or *with respect to the conduct of Partnership business*" must be submitted to arbitration. (Mainas Decl. at Exh. A at 9 (emphasis added).) The parties dispute whether the arbitration clause encompasses Plaintiffs' claims against Mainas and CGCS. "[S]ince the issue of arbitrability is to be determined by the contract entered into by the parties, the task before [the] court remains one of contractual interpretation." *Republic of Nicaragua*, 937 F.2d at 477 (internal quotations and citations omitted). The Court's inquiry must turn on the intent of the parties. *Teamsters Local 315 v. Union Oil Co. of Cal.*, 856 F.2d 1307, 1313 (9th Cir.1988) (citing *Syufy Enters. v. N. Cal. State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir.1980)).

The Ninth Circuit has determined that a "significant" difference exists between broad arbitration clauses, which direct to arbitration disputes "arising out of or *relating to*" the contract, and narrow arbitration clauses, which direct to arbitration only those disputes "arising hereunder." *Mediterranean Enter. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir.1983) (emphasis added). Narrow arbitration clauses are intended to cover only those disputes "relating to the interpretation and performance of the contract itself" whereas broad clauses contemplate coverage of "matters or claims independent of the contract or collateral thereto." *Id.* at 1463–64. The clause in the Partnership Agreement's arbitration provision that reads "with respect to the conduct of Partnership business" clearly falls within the Ninth Circuit's definition of a broad arbitration clause. Thus, the plain language of the Partnership

Agreement signifies that the parties intended the arbitration clause to cover a broad scope of disputes relating to partnership business.

■ Plaintiffs assert that their claims have "nothing to do with Partnership business." (Opp. Br. at 8.) This assertion is unsupported by the Partnership Agreement itself. The Partnership Agreement explains that the partnership between BTG and CGCS' subsidiary, GSTS, was formed to "cooperate in all of their activities in Bulgaria in the Areas of Cooperation [which included cable television ventures]." (Mainas Decl. at Exh. A at 2.) The Partnership Agreement defines partnership activities to include "development, acquisition, management, finance, improvement, operation of business, business activities within the Areas of Cooperation ... and including entering into, performing and carrying out contracts of any kind necessary in connection with or incidental to the accomplishment of [the Bulgarian Venture]." (Mainas Decl. at Exh. A at 2.) Plaintiffs assert that Mainas and CGCS fraudulently induced them to participate in the financing of the Bulgarian Venture. Thus, Plaintiffs' claims fall squarely within the definition of partnership business in the Partnership Agreement.

■ "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dean Witter Reynolds,* 470 U.S. at 221, 105 S.Ct. 1238. In addition, the Ninth Circuit has held that "when international companies commit themselves to arbitrate a dispute, they are in effect attempting to guarantee a forum for any disputes. Such agreements merit great deference, since they operate as both choice-of-forum and choice-of-law provisions, and offer stability and predictability,

regardless of the vagaries of local law." *Republic of Nicaragua,* 937 F.2d at 478 (citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 518–19, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Accordingly, the Court finds that the parties to the Partnership Agreement intended the scope of the arbitration clause to encompass Plaintiffs' claims against CGCS and Mainas.

**C. The Parties to the Partnership Agreement Intended CGCS and Mainas to Have Standing to Enforce the Arbitration Clause.**

■ Plaintiffs contend that neither Mainas nor CGCS have standing to enforce the Partnership Agreement because neither are partners to it. Article 11 of the Partnership Agreement stipulates that there are to be no third party beneficiaries outside of the "Partners" to the agreement. (Mainas Decl. at Exh. A at 9.) CGCS is a signatory to the Partnership Agreement.[4] However, only CGCS' subsidiary, GSTS, is designated specifically as a "Partner" to the agreement. (Mainas Decl. at Exh. A at 1.)

Although not a "Partner," CGCS is included throughout the Partnership Agreement as a party responsible for the joint venture and for undertaking specific tasks and responsibilities in connection with the partnership business. (Mainas Decl. at Exh. A at 2–6 (GSTS' debt guaranteed by CGCS; CGCS agrees to provide management services for the partnership assets; CGCS agrees to enter into escrow agreement for guarantee of performance).) The Partnership Agreement stipulates that it "shall inure to the benefit of and shall be binding upon the heirs, *representatives,* successors, and assigns of the Partners." (Mainas Decl. at Exh. A at 10 (emphasis

---

4. At the time of the Partnership Agreement, CGSC was known as "Global Cable Systems, Inc." (GCS). (Br. at 2.) Throughout the Part- nership Agreement, CGCS is referred to as CGS. For consistency, however, all references in this order will be to CGCS.

added).) Reading all of the provisions of the Partnership Agreement together, it appears that the parties intended the arbitration provision to benefit CGCS, as a representative of GSTS. *See Britton v. Co–op Banking Group,* 4 F.3d 742, 745 (9th Cir. 1993) (holding that non-signatory did not have standing but noting that in order to have standing to compel arbitration, "the law requires a showing that the *parties to the contract* intended to benefit a third party").

In addition, the parties manifestly intended to both benefit and burden CGCS with the requirement to submit to arbitration under the terms of the Partnership Agreement. The parties intended the arbitration clause to be broad, encompassing all claims arising "with respect to the conduct of Partnership business." CGCS is a signatory to the Partnership Agreement. The Partnership Agreement contemplated that CGCS would be involved in carrying out partnership business. Accordingly, the Court finds that permitting CGCS to compel arbitration is consistent with the parties' intentions under the Partnership Agreement. *Britton,* 4 F.3d at 745.

■■■■ Under similar reasoning, Mainas, a non-signatory to the Partnership Agreement, has standing to compel arbitration. A non-signatory can invoke the protections of an arbitration clause "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Westmoreland v. Sadoux,* 299 F.3d 462, 467 (5th Cir.2002). Plaintiffs themselves allege that Mainas was acting individually and in his capacity as an agent of CGCS, a signatory to the Partnership Agreement, when he committed the allegedly fraudulent misrepresentations regarding the Bulgarian Venture. (Opp. Br. at 1; Am. Compl. ¶¶ 31–49.) The Court has

found that the parties intended the right to compel arbitration to apply to CGCS, in its capacity as representative of GSTS in carrying out business for the Bulgarian Venture. Therefore, it is consistent with the parties' intention that Mainas, acting as an agent for CGCS in carrying out business for the Bulgarian venture, also would have the right to compel arbitration.

"Federal courts have consistently afforded agents, employees, and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *Creative Telecommunications, Inc. v. Breeden,* 120 F.Supp.2d 1225, 1240–41 (D.Hawai'i 1997) (citations omitted). "[I]f the rule were otherwise, a party could easily 'avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified.'" *Id.* (citing *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990)). Thus, the Court finds that Mainas has standing to compel arbitration under the Partnership Agreement.

**D. Plaintiffs' Defenses to Arbitration Should be Left to the Canadian Arbitrator.**

■■■■ Plaintiffs lastly contend that Mainas and CGCS cannot enforce the provisions of the Partnership Agreement because they have failed to present evidence that the agreement was "accepted for filing" by the Vancouver Stock Exchange. (Opp. Br. at 7; Mainas Decl. at Exh. A at 10.) However, to avoid delay and obstruction, courts may not consider challenges to a contract's validity or enforceability as defenses against arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18

L.Ed.2d 1270 (1967). "[A]rbitration clauses must be treated as severable from the documents in which they appear unless there is clear intent to the contrary." *Republic of Nicaragua,* 937 F.2d at 476. Having found that Plaintiffs' claims fall within the scope of the arbitration clause, the Court cannot consider Plaintiffs' challenges to the validity of the Partnership Agreement. *See Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801. The merits of any defenses to an agreement to arbitrate must be left to the arbitrator. *Republic of Nicaragua,* 937 F.2d at 478.

### CONCLUSION

As the Court must resolve all doubts in favor of arbitration and for the reasons stated herein, the Court GRANTS Defendants' motion to dismiss in favor of compelling arbitration. All claims in this action against Mainas and CGCS are dismissed without prejudice. Under 9 U.S.C. § 206, all claims in this action against Mainas and CGCS are referred to arbitration in British Columbia, Canada, in accordance with the terms of the parties' Partnership Agreement.

**IT IS SO ORDERED.**