STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss.                                       CIVIL ACTION
                                                     Docket No. CV-07—599

LINDA ENGLAND,

            Plaintiff,

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUN 16 2008

RECEIVED

v.                                          ORDER

CRAIG CANTARA, et al.,

            Defendants.

Before the court is defendants' motion to dismiss or, in the alternative, to stay this case and compel arbitration. The issue in this case is whether the agreements to arbitrate that were signed by plaintiff Linda England cover the claims raised in this case and whether defendant Craig Cantara is entitled to enforce the agreements to arbitrate.

If an agreement to arbitrate applies, the applicable statute provides that the court shall stay the case to await arbitration, 14 M.R.S. § 5928(4), so the court need not further consider defendants' suggestion that the case should instead be dismissed.

England's complaint complains that she received investment advisory and financial planning services from Cantara (doing business as Pinnacle Investments) from 1995 to 2006, that Cantara committed professional negligence by failing to exercise the degree of care required of members of the financial planning profession, that Cantara breached the terms of his contract with England to provide competent financial planning services, that Cantara breached a fiduciary duty that existed between him and England, and that Cantara's actions constituted a violation of the Unfair Trade Practices Act.

The basis of Cantara's argument that these claims are subject to arbitration are three documents with arbitration clauses. The first is a new brokerage account

application with Nathan & Lewis Securities Inc. (NLS), signed by England and dated February 23, 1995. Cantara is not listed or identified as a party to that document, but he signed the document as a registered representative of NLS on a signature line under the words

Registered Representative Review
I have reviewed the account for
completeness/accuracy/suitability/disclosures

The 1995 document (Exhibit B to Cantara's motion) contains a clause stating that it is agreed that "any controversy between the parties arising out of your business or this agreement" shall be submitted to arbitration under the rules of the New York Stock Exchange or any other securities exchange on which a transaction giving rise to a claim took place. The arbitration provision expressly discloses that there are differences between arbitration and court proceedings and that the parties "are waiving their right to a jury trial." In addition, immediately above England's signature on this document appears the statement

I understand that this agreement contains
the above pre-dispute arbitration clause.

The second document relied upon by Cantara is an updated new brokerage account form dated March 14, 2000 (Exhibit C to Cantara's motion). In all pertinent respects with respect to arbitration, the text of this document is identical to the text of the 1995 new account form. In this instance Cantara has signed the agreement both on the signature line for "registered representative review" and on the signature line below for "Branch Office Manager Review." In addition, the back page of the 2000 document contains a disclosure statement which discusses the services to be provided to England by NLS and Cantara.

2

The final document relied upon by Cantara is a Client Services Agreement entered into on September 4, 2002 by England, NLS, and Cantara (Exhibit D to Cantara motion). Cantara is expressly made a party to the agreement, which also outlines investment management and advisory services to be performed. Sections 8(c)-(e) of the 2002 agreement contain arbitration provisions specifying that "any dispute involving client relating to this agreement that cannot be settled shall be taken to arbitration." Like the new account forms previously mentioned, the 2002 agreement states, *inter alia*, that arbitration is final and binding and that the parties waive their right to seek judicial remedies, including a jury trial. In addition, above the signature lines there is a boldface statement that the agreement contains pre-dispute arbitration provisions.[1]

## Discussion

England's response to Cantara's motion to compel arbitration is two-fold. She points out that although Cantara signed the 1995 and 2000 agreements, he was not nominally a party to those agreements. She concedes he was a party to the 2002 agreement and that that agreement remained in effect until 2006 (with Mutual Services Inc. simply substituted for NLS in 2003) but contends that the 2002 agreement should not be interpreted to require arbitration of her claims in this action.

On the issue of whether persons who are not formal parties but who are agents or employees of parties can enforce arbitration agreements, federal circuit courts have split. As far as the court can tell, the Second, Third, Sixth and Eighth Circuits have

---

[1] There is an additional document, dated July 3, 2003, in which Mutual Services Corporation is substituted for NLS as England's Advisor (Exhibit D to Cantara's motion). Cantara is listed as both the "account representative" and the "new representative" in the July 2003 agreement, which states that the client and New Advisor "wish to enter into the New Agreement on terms identical to those set forth in the Old Agreement" with Mutual Services substituted for NLS. Cantara's affidavit indicates that this resulted from a change in his employment when Mutual Services Corp. became his new employer, replacing NLS. Cantara Aff. ¶ 17.

ruled that agents or employees of entities entitled to enforce arbitration agreements can also invoke arbitration. *E.g., Pritzker v. Merrill Lynch Pierce Ferrer & Smith Inc.,* 7 F.3d 1110, 1121-22 (3d Cir. 1993); *Roby v. Corporation of Lloyds,* 996 F.2d 1353, 1360 (2d Cir. 1993);[2] *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281-82 (6th Cir. 1990); *Nesslage v. York Securities Inc.,* 823 F.2d 231, 233-34 (8th Cir. 1987). The First and Fifth Circuits have disagreed. *Westmoreland v. Sadoux,* 299 F.3d 462, 466 (5th Cir. 2002); *McCarthy v. Azure,* 22 F.3d 351 (1st Cir. 1994). The Ninth Circuit appears to allow agents of parties to invoke arbitration under some circumstances but only if the alleged wrongdoing arose out of the provisions of the contract containing an arbitration clause. *Britton v. Co-Op Banking Group,* 4 F.3d 742, 748 (9th Cir. 1993); *Letizia v. Prudential Bache Securities Inc.,* 802 F.2d 1185, 1187 (9th Cir. 1986).

The court will follow the majority of Federal circuits and conclude that if the 1995 and 2000 agreements require arbitration of the claims raised by England in this action and those claims arise out of the agreements in question, Cantara is entitled to invoke the arbitration provision.

The remaining question is whether in fact the arbitration provisions in the 1995 and 2000 agreements – and the 2002 agreement as to which it is acknowledged that Cantara was a party – cover the claims presented here. Unless England can be found to have agreed to arbitrate these claims, she should not be relegated to arbitration.

From England's complaint, the court understands that she is alleging the following: that from the time Cantara began giving England advice in 1995 he followed an aggressive investment strategy (complaint ¶ 12), that he gave her bad advice about retirement and taking a home equity loan in 2000-01 (¶¶ 14-16), that at that time he was

---

[2] On another issue – whether an ambiguous arbitration agreement should be construed in favor of arbitration – the Law Court has declined to follow *Roby. See Barrett v. McDonald Investments Inc.,* 2005 ME 43 ¶ 22 n.5, 870 A.2d 146, 152 n.5. The ambiguity issue is discussed below.

following an overly aggressive and unreasonable investment strategy (¶ 19), that the value of her portfolio fell from $300,000 at the end of 2000 to $92,795 by the end of 2005 (¶ 21), and that during the course of his services he failed to disclose that he would benefit from her investments in the form of commissions, referral fees and the like (¶ 24).

In determining whether disputes are arbitrable, the Law Court has ruled that ambiguities in an arbitration agreement should be construed against the drafter of the agreement in cases where one party had little or no bargaining power. *Barrett v. McDonald Investments Inc.*, 2005 ME 43 ¶¶ 17-18, 22, 820 A.2d at 150-51, 152. In this case, that principle leads to the conclusion that since the arbitration provision in the 1995 agreement is ambiguous, it does not cover England's claims here. However, the 2000 and 2002 agreements are sufficiently unambiguous so England's claims against Cantara from the date of the 2000 agreement onward are arbitrable.

Specifically, the 1995 agreement specifies arbitration of controversies arising out of "your business or this agreement" and also refers to any securities transaction giving rise to a claim but nowhere indicates whether the relationship between England and Cantara is merely that between an investor and a broker or whether it includes financial planning and investment advice. England's claims here concern allegedly incompetent financial planning, and it is not clear that the 1995 agreement covers such claims. Under *Barrett* those claims are not subject to mandatory arbitration.

In the 2000 New Account Form, in contrast, the arbitration agreement likewise applies to controversies arising out of "your business or this agreement," but the back page of the forum clearly indicates that investment advisory services and financial planning are included within the services to be provided. *See* Disclosure Statement, Section II ("Services offered by your Registered Representative"), Paragraph E:

5

> Your Representative is licensed to sell securities and/or insurance products on a commission basis. However, in order to effect proper due diligence and suitability in determining whether or not such product sales are warranted, <u>he may provide certain "Financial Planning" related services</u> incidental to his role as your financial services professional. <u>Such services typically involve advising you and your family regarding the management of your financial resources based on an analysis of your needs.</u> He may review your present and anticipated assets and liabilities, including insurance, savings, investments, as well as your anticipated retirement or other employee benefits. All recommendations, which are implemented in the form of securities or insurance purchases, will cause him to be compensated on a commission basis.

(emphasis added). From the date of the 2000 agreement, the alleged failure to properly provide England with investment advice is a controversy arising out of (1) England's business with NLS and/or (2) the 2000 agreement. From March 14, 2000 onward therefore, England's claims are subject to mandatory arbitration.

The 2002 agreement even more clearly specifies that it involves investment advisory services to be provided by Cantara and its arbitration clause covers any dispute "relating to" that agreement. In the *Barrett* case, the arbitration agreement was a custody account agreement, but the claims involved alleged negligence and misrepresentation with respect to the purchase of an annuity. *See* 2006 ME 43 ¶¶ 12, 19, 870 A.2d at 149, 151. In contrast, the claims in this case relate to investment advice that was expressly contracted for in the 2002 agreement and therefore "relate to" the 2002 agreement within the meaning of the arbitration provision. As a result, Cantara is entitled to demand arbitration under the 2002 agreement.

Where Cantara is entitled to arbitration of certain but not all of England's claims, a practical argument can be made that her claims should not be fragmented and that either (1) England should be permitted to pursue all her claims in court or (2) all her claims should be relegated to arbitration. However, this does not appear to be the law.

6

*See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Maine's arbitration statute states that when issues are severable, a stay should only be granted as those issues subject to arbitration. 14 M.R.S. § 5928(4). Accordingly, only England's arbitrable claims are stayed.

The entry shall be:

Defendants' motion for a stay is granted in part and defendants' motion to compel arbitration is granted as to claims relating to any action or inaction by defendants beginning on March 14, 2000. As to claims relating to defendants' actions or inaction prior to March 14, 2000, defendants' motion is denied.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:    June  16  , 2008

Thomas D. Warren
Justice, Superior Court

7

= COURTS
nd County
ox 287
ne 04112-0287

_Plaintiff_

MICHAEL MARTIN ESQ
PO BOX 17555
PORTLAND ME 04112

)F COURTS
land County
Box 287
line 04112-0287

_Defendant_

ANTHONY SINENI ESQ
701 CONGRESS STREET
PORTLAND ME 04102

