**MERRILL LYNCH TRUST COMPANY FSB, et al., Appellants,**

**v.**

**Juan ALANIZ and Norma Alaniz, Appellees.**

**In re Merrill Lynch Trust Company FSB, Merrill Lynch Life Insurance Company, and Henry Medina, Relators.**

**Nos. 13–04–073–CV, 13–04–150–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 5, 2004.

Charles A. Gall, Melinda H. Sims, Robert B. Gilbreath, Jeffrey L Crouch, Joel R. Sharp, Jenkens & Gilchrist, Dallas, for appellants.

J.A. 'Tony' Canales, Nancy M. Simonson, Hector A. Canales, Canales & Simonson, P.C., Corpus Christi, for appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Chief Justice VALDEZ.

In this consolidated accelerated appeal and original proceeding, Merrill Lynch Trust Company FSB, Merrill Lynch Life Insurance Company, and Henry Medina (collectively, relators) seek relief from the trial court's denial of their motion to compel arbitration. At issue here is whether, under agency principles and the doctrine

of equitable estoppel, they can seek enforcement of an arbitration agreement contained in a contract to which they were not signatories. We dismiss the accelerated appeal and deny the petition for writ of mandamus.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The Alanizes' Suit

In April 2003, appellees and real parties in interest, Juan and Norma Alaniz, filed the underlying action against relators. According to their original petition, in 1994, after the Alanizes recovered over two million dollars in an unrelated personal injury suit, relators solicited the Alanizes regarding the creation of an irrevocable trust. The Alanizes, who lacked experience or education in financial matters, trusts, and insurance policies, engaged their services.

Relators arranged for an attorney to draft an irrevocable trust agreement. The trust agreement identified the Alanizes as the settlors and the Merrill Lynch Trust Company as the trustee, owner of any life insurance policies owned by the trust, and beneficiary of each policy. The agreement also authorized the sale and purchase of Merrill Lynch Trust Company's affiliates' or subsidiaries' products and the payment of fees and commissions to these affiliates or subsidiaries.

In reliance on relators' representations, the Alanizes transferred over $200,000 to the Merrill Lynch Trust Company. As trustee, the company used these funds to purchase life insurance from its affiliate, the Merrill Lynch Life Insurance Company, through Medina as agent for the insurance company. This, the Alanizes contend, is unlawful self-dealing, which the Merrill Lynch Trust Company itself acknowledged in internal documents. The Alanizes allege violations of the property code, the insurance code, the business and commerce code, and the Texas Deceptive Trade Practices Act as well as breach of fiduciary duty, fraudulent conversion, theft, negligent misrepresentation, unjust enrichment, and negligence.

### B. Motion to Compel Arbitration

On October 13, 2003, relators filed a motion to compel arbitration and stay proceedings. Neither the trust agreement nor the insurance policy contain an arbitration agreement. Rather, the arbitration agreements relators seek to enforce are contained in contracts to which relators are not signatories. Relators contended in the motion, even though they were not signatories to the contracts containing arbitration agreements, they are entitled to seek arbitration under agency principles and the doctrine of equitable estoppel. In support of these arguments, relators relied on the following facts.

After the Alanizes recovered the money from the judgment in the personal injury suit, their attorney contacted Medina, a financial advisor employed by Merrill Lynch, Pierce, Fenner & Smith (MLPF & S), and asked him to explain the company's investment services. Following various meetings, the Alanizes opened an account with MLPF & S by executing a Cash Management Account Application and Agreement (CMA agreement). The Alanizes later opened a second account by executing a similar agreement. These CMA agreements contained arbitration agreements stating:

> I [the Alanizes] agree that all controversies which may arise between us [the Alanizes and MLPF & S], including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior,

on or subsequent to the date hereof, shall be determined by arbitration.

Based on information provided by the Alanizes, MLPF & S generated a financial report for them, which described how they could use life insurance as part of their financial plan. Medina subsequently arranged a meeting between the Alanizes and Nick Harrison, a Merrill Lynch insurance specialist, who suggested the possibility of the Alanizes purchasing a life insurance policy.

The Alanizes decided to form a trust as a vehicle for purchasing the policy and created the trust by executing an irrevocable trust agreement. The Alanizes then authorized the transfer to the trust of money from one of their MLPF & S cash management accounts, which was later used to purchase a life insurance policy from Merrill Lynch Life Insurance Company, an affiliate of both MLPF & S and Merrill Lynch Trust Company. Several subsequent transfers were made from both of the Alanizes' cash management accounts to the trust for the purposes of paying the annual premiums on the policy.

Relators argued in the motion that, despite "artful" pleading, the Alanizes' claims against them actually originate with their MLPF & S accounts and the CMA agreements. This, they said, entitles them to enforce the arbitration agreements in the CMA agreements.

The trial court denied the motion to compel and stay the trial proceedings. Relators filed an accelerated appeal seeking relief under the Texas Arbitration Act.[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1) (Vernon Supp.2004) (allowing interlocutory appeal from order denying motion to compel arbitration where motion made under Texas Arbitration

Act). They also filed a petition for writ of mandamus seeking relief under the Federal Arbitration Act.[2] In both of the proceedings before us, relators contend that agency principles and the doctrine of equitable estoppel entitle them to seek arbitration despite the fact they are not signatories to the CMA agreements containing the arbitration clauses.

## II. ANALYSIS

### A. Jurisdiction over Appeal

■ The Alanizes contend, as an initial matter, that we do not have jurisdiction over the accelerated appeal under section 171.098(a)(1) of the civil practice and remedies code because the Texas Arbitration Act does not govern the arbitration agreement at issue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1). Either the Federal Arbitration Act or New York law governs the dispute over the applicability of the arbitration provision, according to the Alanizes. The arbitration agreements do not explicitly invoke either the Federal Arbitration Act or the Texas Arbitration Act, although the CMA agreements contain New York choice-of-law provisions.

■ A trial court's order denying a motion to compel arbitration may be reviewed by interlocutory appeal where the motion is brought under the Texas Arbitration Act. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1); *see In re MONY Sec. Corp.,* 83 S.W.3d 279, 282 (Tex.App.-Corpus Christi 2002, orig. proceeding). Mandamus is the appropriate remedy, however, when the trial court improperly denies a motion to compel arbitration under the Federal Arbitration Act. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.

---

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–171.098 (Vernon Supp.2004).

2. 9 U.S.C. §§ 1–16 (2004).

1992) (orig.proceeding); *In re MONY Sec. Corp.*, 83 S.W.3d at 282.

■ The Federal Arbitration Act governs an arbitration agreement contained in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2 (2003); *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Jack B. Anglin Co.*, 842 S.W.2d at 269–70. This provision is coextensive with the reach of the Commerce Clause of the United States Constitution. *Allied–Bruce Terminix Cos.*, 513 U.S. at 273–77, 115 S.Ct. 834; *In re L & L Kempwood Assocs.*, 9 S.W.3d 125, 127 (Tex.1999) (orig.proceeding); *In re MONY Sec. Corp.*, 83 S.W.3d at 282. That is, a contract evidences a transaction involving commerce if it involves or affects interstate commerce. *Allied–Bruce Terminix Cos.*, 513 U.S. at 277–81, 115 S.Ct. 834; *In re MONY Sec. Corp.*, 83 S.W.3d at 282.

Here, relators rely on the arbitration agreement contained in the CMA agreements in contending the Alanizes' claims should be submitted to arbitration. According to Medina's affidavit, the CMA agreements governed the cash management accounts, which were brokerage accounts through which investments were made in national securities markets, including the purchase of mutual funds that bought and sold stocks traded on the New York Stock Exchange. This establishes that the CMA agreements are contracts "evidencing a transaction involving commerce." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson*, 805 S.W.2d 38, 39 (Tex.App.-El Paso 1991, no writ) (securities account agreement is contract for purpose of trading securities and clearly involves commerce within scope of Federal Arbitration Act).

Because the Federal Arbitration Act governs the CMA agreement and the issue of whether the arbitration agreements contained therein apply to the Alanizes' claims, mandamus is the appropriate vehicle for relief. That the CMA agreements had a New York choice-of-law provision does not bar application of the Federal Arbitration Act because the choice-of-law provision did not explicitly exclude the application of federal law. *See In re L & L Kempwood Assocs.*, 9 S.W.3d at 127–28; *In Re Valle Redondo, S.A. De C.V.*, 47 S.W.3d 655, 661 (Tex.App.-Corpus Christi 2001, orig. proceeding). Accordingly, we dismiss the interlocutory appeal for lack of jurisdiction and proceed to the merits of the petition for writ of mandamus. *See In re MONY Sec. Corp.*, 83 S.W.3d at 283 (dismissing interlocutory appeal and addressing mandamus action where arbitration agreement governed by Federal Arbitration Agreement).

## B. Petition for Writ of Mandamus

■ Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law where there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). Relators must establish that either the trial court could reasonably have reached only one decision concerning the resolution of certain factual issues or matters committed to its discretion or the trial court failed to analyze or apply the law correctly to the facts. *Id.* at 839–40.

■ The party seeking to compel arbitration must first establish the existence of an arbitration agreement and that the claims asserted fall within the scope of the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003); *In re MONY Sec. Corp.*, 83 S.W.3d at 283. The initial burden of establishing the existence of an arbitration agreement includes proving that the party seeking to enforce the agreement was a party to the agreement

or otherwise had the right to enforce it. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). A party that is not a signatory to an arbitration agreement may enforce it if the party falls into a recognized exception under general equitable or contract law that would allow such enforcement. *Id.* at 836.

Here, relators acknowledge they are not signatories to the agreements they seek to enforce. The question becomes whether relators have carried their burden to establish that they are entitled to enforce the arbitration agreements under general equitable or contract law.

## 1. Agency

▮▮▮ Relators contend they are entitled to enforce the arbitration provision in the CMA agreements based on agency principles. In particular, they say Medina is entitled to arbitration as an employee of MLPF & S, and Merrill Lynch Trust Company and Merrill Lynch Life Insurance Company are entitled to arbitration as affiliates of MLPF & S.

▮▮▮ Under ordinary contract and agency principles, nonsignatories of an arbitration agreement may be bound by the agreement and entitled to enforce it. *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 557 (Tex.App.-San Antonio 2003, orig. proceeding); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex.App.-Dallas 2001, orig. proceeding); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir.1993); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir.1990). When the principal is bound by a valid arbitration agreement, "its agents, employees, and representatives are covered by that agreement." *McMillan*, 66 S.W.3d at 481. An agent may enforce an arbitration agreement to which his principal was a signatory "when all the agent['s] allegedly wrongful acts relate to [his] behavior as agent[ ] of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable." *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d at 557.

Relators contend this case is analogous to *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, in which the court found agency principles entitled an employee and an affiliate of MLPF & S to enforce the arbitration agreement contained in a Cash Management Account for Retirement Plans Agreement.[3] *Pritzker*, 7 F.3d at 1112. In *Pritzker*, the plaintiffs, trustees of a pension plan with MLPF & S cash management accounts, sued MLPF & S; a financial consultant employed by MLPF & S; and an affiliate of MLPF & S,

---

**3.** The Alanizes note the Fifth Circuit Court of Appeals has recognized a "tension" in decisions analyzing the application of agency principles to determine whether agents of signatories are entitled to enforce arbitration agreements. *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir.2002). That court stated that, despite the Third Circuit's position in *Pritzker* that mere agency principles suffice:

a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories. An agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is

disclosed, but he is personally liable if his acts breach an independent duty. If he seeks to compel arbitration, he is subject to the same equitable estoppel framework left to other nonsignatories.

*Westmoreland*, 299 F.3d at 466–67 (criticizing agency analysis performed in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir.1993)). We need not and do not address this "tension" because we conclude, even under *Pritzker*, that relators are not entitled to enforce the arbitration agreements contained in the CMA agreements.

Merrill Lynch Asset Management, Inc. (MLAM). *Id.* MLPF & S, MLAM, and the consultant sought to enforce the arbitration agreement contained in the cash management agreement. *Id.* at 1113. One of the issues on appeal was whether MLAM and the consultant could rely on agency principles in seeking arbitration because neither MLAM nor the consultant was a signatory to the contract containing the arbitration provision. *Id.* at 1121–22.

The court of appeals concluded the consultant was covered under the arbitration agreement under "traditional agency theory." *Id.* at 1121. The court relied on case law applying agency theory where the non-signatory employees were integral to and responsible for the alleged wrongful acts of the signatory principal. *Id.* at 1121–22 (citing *Letizia v. Prudential Bache Sec.,* 802 F.2d 1185, 1188 (9th Cir.1986); *Trott v. Paciolla,* 748 F.Supp. 305, 309 (E.D.Pa. 1990)). The court found MLAM likewise fell within the scope of the arbitration agreement because it was clear from the record that MLAM was obligated to perform certain services with the cash management accounts opened by the trustees, and may have been an alter ego of MLPF & S. *Id.* at 1122. The court relied heavily on the plaintiffs' theory of liability demonstrating that MLAM's interests were directly related to, if not predicated upon, MLPF & S's conduct. *Id.*

The case before us is factually distinct. Unlike the plaintiffs in *Pritzker,* the Alanizes raised no claims against MLPF & S. Their petition does not allege any misconduct by MLPF & S. The petition also contains no allegations of misconduct by Medina in his capacity as financial advisor for MLPF & S. That is, none of the allegations mention any of the financial advice Medina, as an employee of MLPF & S, gave the Alanizes. Notably, the Alanizes' petition explicitly states that their claims

against Medina are based solely on his role as insurance agent for Merrill Lynch Life Insurance Company in the sale of the insurance policy.

Relators contend Medina was compensated for the sale of the insurance policy by MLPF & S in support of their position and direct our attention to an affidavit signed by Medina in which he states he received his commission from MLPF & S. However, during oral arguments, relators conceded that Merrill Lynch Life Insurance Company paid MLPF & S for Medina's sale of the policy and that MLPF & S in turn paid Medina. Thus, although Medina received the money from MLPF & S, the funds for Medina's compensation were provided by Merrill Lynch Life Insurance Company.

With respect to Merrill Lynch Life Insurance Company and Merrill Lynch Trust Company, the record does not show they were compelled to provide services to the Alanizes under the cash management accounts the Alanizes held with MLPF & S or that these affiliates were merely acting as alter egos of MLPF & S in the services they provided to the Alanizes. We cannot say here that the theory of liability against these two affiliates is predicated upon any misconduct by MLPF & S, particularly because none of the claims against these affiliates involves allegations of misconduct by MLPF & S.

The misconduct alleged in the Alanizes' petition is that the Merrill Lynch Trust Company, as trustee, engaged in improper self-dealing by purchasing for the trust a life insurance policy from its affiliate and that relators later attempted to conceal the wrongdoing. Neither the petition nor the record shows that MLPF & S had any role in that transaction or that the Alanizes' complaints in actuality are based on services rendered by MLPF & S through Medina. Accordingly, the trial court did

not abuse its discretion in failing to apply agency theory in this instance. *See In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d at 557 (finding no abuse of discretion in denying motion to arbitrate made by Medina and Merrill Lynch Trust Company as purported agents of MLPF & S where no claims were made against MLPF & S and there was no evidence they were working on behalf of MLPF & S on matters covered by CMA agreement).

### 2. Equitable Estoppel

Relators also contend they are entitled to enforcement of the arbitration agreements under the doctrine of equitable estoppel. In particular, they contend the misconduct the Alanizes complained of presumes the existence of the CMA agreements and that their petition raises allegations of substantially interdependent and concerted misconduct by relators and MLPF & S.

The doctrine of equitable estoppel allows a nonsignatory party to compel arbitration in two situations. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d at 555.

First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (internal quotations and citations omitted); *see also Grigson*, 210 F.3d at 527; *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d at 555. The application of this doctrine falls within the trial court's discretion. *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d at 555.

The Alanizes' did not make reference to or otherwise rely on the terms of the CMA agreement in asserting any of their claims against the relators. No mention in the petition is made of the CMA agreements. Their claims are based on the purchase by the Merrill Lynch Trust Company as trustee of a life insurance policy from the Merrill Lynch Life Insurance Company through Medina. These claims do not raise or rely on the transaction between the Alanizes and MLPF & S governed by the CMA agreement.

Relators direct our attention to the fact that the funds used to purchase the life insurance policy were at some point in the cash management accounts the Alanizes had with MLPF & S. However, whether the funds were ever in the cash management accounts with MLPF & S has no bearing on the question of whether the trust company's purchase of a life insurance policy from its affiliate was improper.

Relators also contend the creation of the trust, and hence the relationship between the Alanizes and the Merrill Lynch Trust Company, was dependent on their status as customers of MLPF & S. This statement is supported by the record. However, the deposition testimony of Richard Morris, vice president of the Merrill Lynch Trust Company, establishes, although the trust company does not accept a life insurance trust unless there is a relationship with MLPF & S, that an actual cash man-

agement account (and, hence, a CMA agreement) is not necessarily required. That is, the Merrill Lynch Trust Company would accept funds from sources other than cash management accounts with MLPF & S to purchase life insurance policies. Although the Alanizes' relationship with the Merrill Lynch Trust Company may have been initiated as a result of their relationship with MLPF & S, the relationship with the trust company was not dependent on the establishment of or transfers of money from the cash management accounts. Thus, the Alanizes' claims do not presume the existence of the CMA agreement.

Similarly, the Alanizes have not alleged claims of misconduct by MLPF & S, much less substantially interdependent and concerted misconduct by MLPF & S and relators. The record does not support the conclusion that either the Merrill Lynch Trust Company or the Merrill Lynch Life Insurance Company had any duties or responsibilities to the Alanizes under the CMA agreements. The trust agreement does not show that MLPF & S had any duties or responsibilities in the management of the trust. Although Medina gave the Alanizes' financial advice and even suggested the purchase of a life insurance policy as an investment option, his conduct as an employee of MLPF & S is not the subject of the Alanizes' claims. Their complaint is not that the advice to invest in a life insurance policy was improper. Rather, they allege that the Merrill Lynch Trust Company's choice in purchasing a policy *from its affiliate* through Medina solely in his capacity as an insurance agent resulted in unlawful self-dealing by the trustee.

Relators also allege, although Medina may have been acting as an insurance agent, he had not abandoned his role as financial advisor employed by MLPF & S

when he handled the purchase of the insurance policy for the trust company. However, the record does not support this conclusion. Nothing in the record shows that MLPF & S is in the business of selling insurance policies or serving as agent for insurance companies.

Relators have failed to establish that the Alanizes relied on the terms of the CMA agreement in asserting their claims against relators or that the Alanizes raise claims of substantially interdependent and concerted misconduct by MLPF & S and relators. Accordingly, the trial court did not abuse its discretion in refusing to apply the doctrine of equitable estoppel.

## III. CONCLUSION

Relators bore the initial burden of establishing before the trial court that they had the right to enforce the arbitration agreements contained in the CMA agreements. *See Mohamed,* 89 S.W.3d at 836. The trial court did not abuse its discretion in determining relators failed to meet this initial burden. Accordingly, we deny the petition for writ of mandamus.

Concurring opinion by Justice CASTILLO.

CASTILLO, Justice, concurring.

I concur in the result only.