

NUMBER 13-06-00353-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

IN RE RIO GRANDE REGIONAL HOSPITAL

On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion Per Curiam[1]

Relator, Rio Grande Regional Hospital ("Rio Grande"), filed a petition for writ of mandamus seeking to compel the trial court to grant its motion to arbitrate under the Federal Arbitration Act (the "FAA"). *See* 9 U.S.C. §§ 1-16 (2000). We deny the writ.

### I. Background

Real party in interest, Norma Gonzalez, worked for Rio Grande as a housekeeper. She was injured in the course and scope of her employment and brought suit against Rio Grande, a non-subscriber to workers' compensation, for negligence, gross negligence, and

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

premises liability.

Rio Grande filed a motion to compel arbitration based on affidavit testimony from Mary Ann Escobedo, its Employee Health and Safety Plan coordinator, a copy of the "HCA Inc. Employee Health and Safety Program Benefit Plan" (the "Plan"), a list of "Affiliated Employers," including Rio Grande, and the "HCA Inc. Employee Health and Safety Program Summary Plan Description General Information."

The "Election to Participate in the Employee Health and Safety Program Benefit Plan of HCA INC and Agreement to Submit to Arbitration," signed by Gonzalez, provides in part:

> I understand that HCA Inc. and its Affiliated Employers do not subscribe to the Texas Workers' Compensation Act; and instead, HCA Inc. has established an Employee Health and Safety Program Benefit Plan ("Plan") that has been adopted by its Affiliated Employers. I also understand that under the Plan and under certain conditions, subsequent to a work-related, on-the-job injury, certain medical treatment and certain wage replacement benefits will be provided only to those employees who voluntarily elect to participate in the Plan. I further understand that the Plan includes provisions for mutual arbitration of certain disputes between HCA Inc. and/or its Affiliated Employers and its/their employees.
>
> I have had explained to me and understand that I have a right not to participate in the Plan and retain the right to sue in civil court and pursue my common law rights. In doing so, I would not be eligible to receive any occupational benefits under the Plan if I am injured on the job. If I choose not to enroll in the Plan, I understand I am entitled to bring legal action in civil court against HCA Inc. and/or any Affiliated Employer(s) . . . .
>
> By execution of this document, I hereby voluntarily elect to participate in the Employee Health and Safety Program Benefit Plan of HCA Inc. (the "Plan"). AS REQUIRED BY THE TERMS OF THE PLAN, I, THE UNDERSIGNED, AND ON BEHALF OF MY HEIRS AND ASSIGNS, HEREBY FREELY, IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO SUE HCA INC. AND/OR ANY AFFILIATED EMPLOYER(S) IN CIVIL COURT FOR ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I, MY HEIRS OR ASSIGNS MAY HAVE AGAINST HCA INC., ITS AFFILIATED EMPLOYERS AND /OR SUBSIDIARIES, THEIR OFFICERS, DIRECTORS, SHAREHOLDERS, AGENTS AND EMPLOYEES, THAT ARISE OUT OF OR ARE RELATED TO INJURIES OR DEATH SUSTAINED BY ME IN THE COURSE AND SCOPE

OF MY EMPLOYMENT BY HCA INC. AND/OR ANY AFFILIATED EMPLOYER(S) AND ARE CAUSED BY THE SOLE NEGLIGENCE OF HCA INC. AND/OR ANY AFFILIATED EMPLOYERS OR THE NEGLIGENCE OF HCA INC. AND/OR ANY AFFILIATED EMPLOYER(S) CONCURRENT WITH THE NEGLIGENCE OF ANY OTHER PERSON OR ENTITY. Rather, by electing to participate in this Plan, I agree to resolve my claims by arbitration as outlined below . . . .

In execution of this Election to Participate ("Exhibit 1") under the Employee Health and Safety Program Benefit Plan, I agree that all claims or controversies arising out of or relating to any on-the-job injury and/or death that cannot first be resolved through an internal review process and, if necessary, through mediation are subject to final and binding arbitration, and shall be settled by arbitration administered by the American Arbitration Association . . . .

. . . .

I understand that should I elect to retain my legal rights to sue HCA Inc. and/or any Affiliated Employer(s) in civil court and reject the benefits outlined in the Plan, I must request the appropriate form from the Human Resources Director.

The Plan defines an "employee" as a "person who is solely employed in the State of Texas by an Employer . . . but shall not include any person who performs services for an Employer as an independent contractor or otherwise in a non-employee status." Under the Plan, a "participant" is an "eligible [e]mployee who satisfies all requirements for participating in the Plan, who has elected to participate in the Plan . . . ."

Escobedo testified that Rio Grande, a non-subscriber under the Texas Workers' Compensation Act, established the Plan "to provide participating employees who elect to participate in the Plan with certain benefits for occupational injuries and illnesses." The Plan is for "the prevention of work-related injuries." Its purpose is "to provide (1) certain medical benefits for Participants who sustain an occupational injury and (2) certain short-term wage replacement benefits to Participants who sustain an occupational injury."

Escobedo testified that Rio Grande is an "Affiliated Employer" under the Plan. Under the Plan, HCA Inc., its affiliated employers, and their employees agree to "mutual

3

and binding arbitration" as to any and all disputes arising out of a reported or claimed on-the-job injury, including a claim of workplace negligence.  According to Escobedo, employees who elect to participate in the Plan receive "immediate" coverage.  Escobedo testified that Gonzalez signed an election to participate in the Plan.

Gonzalez filed a response to the motion to compel arbitration in which she denied the existence of a valid arbitration agreement, denied that Rio Grande was a party to the alleged agreement to arbitrate, and asserted that the alleged agreement lacked consideration.  Gonzalez testified by affidavit attached to her response that she was hired by Rio Grande on a temporary basis to perform housekeeping services in place of a regular, full-time employee who was on medical leave.  Her supervisor, Stew White, told her that she was classified as a "PRN" or "Pool" employee, who would work on an "as needed" basis, and that as classified, she "was not entitled to any employee benefits."

Gonzalez testified that she signed the election "in exchange for HCA Inc.'s promise to provide [her] medical treatment and wage replacement benefits for work related on-the-job injuries."  She testified that, at the time she signed the election form, she was not shown or provided copies of the HCA Inc. Employee Health and Safety Program Benefit Plan or the HCA Employee Health and Safety Program Summary Plan Description.

Gonzalez worked for Rio Grande for approximately three months.  On July 30, 2003, in the presence of her supervisor, Norma Alvarado, Gonzalez sustained a head injury in the course and scope of her employment when she struck her head on a metal light fixture. Gonzalez attempted to file an incident report and claim for benefits under the Plan. According to her testimony, she "was not allowed to do so by my Supervisor Norma Alvarado, by Ms. Alvardo's Supervisor Stew White, or Mary Ann of Human Resources." According to her testimony, "Mr. Stew at that time notified me that as a PRN employee I

4

did not qualify for any type of employee benefit." Gonzalez further testified that her attorney also attempted to submit a claim on her behalf and was informed that she was not covered under the Plan.

The trial court held a non-evidentiary hearing on the motion to compel arbitration and denied the motion without specifying the basis for its denial. This original proceeding ensued. The Court requested and received a response to the petition for writ of mandamus from the real party in interest, and also received a reply thereto, with supplemental authorities, from Rio Grande. *See* TEX. R. APP. P. 52.4, 52.5. Rio Grande contends by one issue that the trial court abused its discretion by denying the motion to compel arbitration.

As an initial matter, we note that Rio Grande currently contends in its petition for writ of mandamus that it denied benefits to Gonzalez because she failed to timely file her claim under the Plan. This argument was not presented to the trial court and is unsupported by any record evidence. Accordingly, we do not consider it herein. *See generally* TEX. R. APP. P. 33; *In re Am. Optical Corp.* 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding); *In re Chu*, 134 S.W.3d 459, 463 (Tex. App.–Waco 2004, orig. proceeding). Rio Grande does not otherwise address or refute Gonzalez's testimony that she was never eligible for benefits under the Plan, nor does it offer evidence that she was a qualified employee who was eligible for participation in the Plan.

## II. Standard of Review

A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion.

5

*Id.* at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2000) (section 4 of the FAA provides in part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

As the Texas Supreme Court has reaffirmed, the issuance of mandamus "is largely controlled by equitable principles." *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 404 (Tex. 2007) (orig. proceeding) (quoting *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993)). In the recent decision in *Pleasant Glade Assembly of God v. Schubert*, both the majority opinion and dissent discuss judicial estoppel, an equitable doctrine invoked by a court at its discretion. 264 S.W.3d 1, 6 (Tex. 2008); *see also id.* 264 S.W.3d at 14-15 (Jefferson, C.J., dissenting) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). "The doctrine of judicial estoppel . . . is a rule of procedure based on justice and sound public policy . . . to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage." *Id*. at 6. In the context of arbitration, the Texas Supreme Court has also recently reaffirmed that estoppel bars a party from taking one view with

6

respect to the benefits under a contract and the opposite view with regard to the arbitration clause in the same contract:

> In arbitration cases, we have held a nonparty who enjoys substantial direct benefits from a contract may be estopped from denying an arbitration clause in the same contract. By the same token, a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils.

*Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008) (footnote omitted); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133-35 (Tex.2005), and *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex.2006).

### III. The Court's Review of Arbitration Issues

Justice Nathan Hecht recently wrote that "[i]nstitutional litigants, usually defendants, view arbitration as . . . more favorable for strategic reasons" despite the fact that they forego "a right of appeal." Nathan Hecht, *Jury Trials Trending Down in Texas Civil Cases*, 69 TEX. BAR J. 854 (Oct. 2006). *But see generally Perry Homes*, 258 S.W.3d at 597 (finding that plaintiffs, seeking to compel arbitration against an institutional defendant, waived their rights to arbitration). While arbitrators may decide what defenses might apply to the whole contract, "courts decide defenses relating solely to the arbitration clause" and thus "courts must decide if an arbitration clause was" fraudulently induced. *Perry Homes*, 258 S.W.3d at 589. Accordingly, because issues like waiver go "solely to the arbitration clause rather than the whole contract, consistency suggests it is an issue for the courts" rather than the arbitrator. *Id.* "In the arbitration context, arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract." *In re Lyon Financial Services, Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)).

Texas jurisprudence mandates that we vigilantly maintain this Court's review of

arbitration issues; as Justice Scott Brister recently reminded us, our right to trial by jury is a keystone of the American tradition of liberty:

> The Founders saw trial by jury as a means of protecting Americans from their own government . . . . The Declaration of Independence listed twenty-seven specific complaints against George III's government, one of which was "depriving us in many cases, of the benefits of Trial by Jury." Even before the Revolutionary War, Blackstone called trial by jury "the principal bulwark of our liberties."

Scott Brister, *The Decline in Jury Trials: What Would Wal-Mart Do?* 47 S. TEX. L. REV. 191, 212-13 (2005) (footnotes omitted).

### III. Validity of the Arbitration Agreement

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove its defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal

policy embodied in the FAA favors agreements to arbitrate and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

## IV.  Validity & Scope of Agreement to Arbitrate

In the instant case, Gonzalez signed a document entitled "Exhibit '1' Election to Participate in the Employee Health and Safety Program Benefit Plan of HCA, Inc. and Agreement to Submit to Arbitration."  Under this document, Gonzalez elected to receive benefits under the Plan in exchange for not suing HCA Inc. or any affiliated employers in civil court for any causes of action arising out of or relating to injuries in the course and scope of her employment. Although Gonzalez asserts several defenses to the agreement, Gonzalez's  arguments below and on appeal do not deny the existence of this signed document. Accordingly, we conclude that Rio Grande has established the existence of an arbitration agreement.

We further conclude that the arbitration agreement covers Gonzalez's claims against Rio Grande.  In the instant case, all of Gonzalez's claims have their genesis in an injury she received in the course and scope of her employment, and accordingly, fall within the scope of the broad arbitration clause that she signed.  In this regard, we would note that courts recognize the use of "any" dispute "arising out of or relating to" as broad language that expressly includes tort and other claims relating to the contractual

9

relationship. *See In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 895 (Tex. App.–Houston [14th Dist.] 2006, orig. proceeding); *Dewey v. Wegner*, 138 S.W.3d 591, 601 & n.20 (Tex. App.–Houston [14th Dist.] 2004, orig. proceeding).

## V. Nonsignatory

The initial burden of establishing the existence of an arbitration agreement includes proving that the party seeking to enforce the agreement was a party to the agreement  or otherwise had the right to enforce it. *Merrill Lynch Trust Co. FSB v. Alaniz*, 159 S.W.3d 162, 167-68 (Tex. App.–Corpus Christi 2004, no pet.); *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.–Houston [1st Dist.] 2002, orig. proceeding); *see also In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 189-90 (Tex. 2007) (orig. proceeding) (discussing the enforcement of arbitration against non-signatory corporate affiliates). Gonzalez asserts that there was not a valid arbitration agreement because Rio Grande was not a party to the arbitration agreement.  In the instant case, Gonzalez signed a document entitled "Exhibit 1," further entitled "Election to Participate in the Employee Health and Safety Program Benefit Plan of HCA, Inc. and Agreement to Submit to Arbitration." Gonzalez testified that, at the time she signed the election, she was not shown or provided copies of the HCA Inc. Employee Health and Safety Program Benefit Plan or the HCA Employee Health and Safety Program Summary Plan Description.

The election refers to the Plan and acknowledges that Gonzalez has received a copy of the summary plan description.  Under the election:

> The Arbitration Procedures set forth in the Summary Plan Description (and also in Section Seven of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were set forth in this Agreement at length and in full.  This Agreement, combined with the incorporated Arbitration Procedures set forth in the Summary Plan description, is the complete agreement between HCA, Inc., its Affiliated Employers and me on the subject of arbitration of these types of disputes.

The Affiliated Employers are identified in Exhibits to the Summary Plan Description and the Plan. Rio Grande is included in that list.

A person who signs a contract is presumed to have read and understood the contract and to have fully comprehended its legal effect, unless she establishes fraud in the inducement or mental incapacity. *Raymond James & Assocs. v. Bowman*, 196 S.W.3d 311, 318 (Tex. App.–Houston [1st Dist.] 2006, no pet.); *Nguyen Ngoc Giao v. Smith & Lamm*, 714 S.W.2d 144, 146 (Tex. App.–Houston [1st Dist.] 1986, no writ). We need not reach the question of whether Gonzalez's assertions regarding the empty promise of employee benefits in exchange for signing the election adequately raise the issue of fraud in the inducement in light of our conclusions about the failure of consideration, as set out below.

## VII. Consideration

Rio Grande has proved the existence of a valid arbitration agreement and a dispute falling within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. Accordingly, we next consider whether Gonzalez has carried her burden of proof regarding her defenses to the arbitration agreement. *J. M. Davidson, Inc.*, 128 S.W.3d at 227. Gonzalez contends that the arbitration agreement is not enforceable because the agreement was not supported by consideration or there was a failure of consideration, or a condition precedent was never satisfied.[2]

Rio Grande argues that there was not a failure of consideration. It contends that:

---

[2] Lack of consideration refers to a contract that lacks mutuality of obligation. *Belew v. Rector*, 202 S.W.3d 849, 854 n.4 (Tex. App.–Eastland 2006, no pet.) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997)). Failure of consideration occurs when, due to a supervening cause after an agreement is reached, the promised performance fails. *Id.* (citing *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 279 (Tex. App.–Dallas 2005, no pet.)). The distinction between the two is that lack of consideration exists immediately after the execution of a contract while failure of consideration arises because of subsequent events. *Id.* In contrast, a condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *See id.*

11

(1) the parties' mutual promises to arbitrate constitute proper consideration supporting the agreement; (2) Gonzalez received the benefit of "participation and coverage" under the plan for three months prior to her injury, and this participation constituted the necessary consideration for the agreement; and (3) if there is any failure of consideration based on Gonzalez's failure to receive benefits under the Plan, it is a partial failure, given consideration provided by the mutual promises to arbitrate and Gonzalez's ability to participate in the Plan, and thus rescission of the agreement is not allowed.

In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *See Kaplan*, 514 U.S. at 944; *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). Under Texas law, parties enter into a binding contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P.*, 64 S.W.3d at 522.

Consideration is a fundamental element of any valid contract. *See id.* A contract that lacks consideration lacks mutuality of obligation. *See Fed. Sign v. Tex. State Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997); *Labor Ready Cent. III, L.P.*, 64 S.W.3d at 522. Arbitration agreements, like other contracts, must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *see In re Advance PCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam). In arbitration agreements, consideration may take the form of bilateral promises to arbitrate. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re Advance PCS*, 172 S.W.3d at 607. When an arbitration clause is part of a larger, underlying contract, the remainder of the contract may

suffice as consideration for the arbitration clause. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding).

Based on the specific arbitration provision at issue in this case and the record evidence, we conclude that the arbitration agreement at issue herein lacked consideration. Under the agreement, Gonzalez was promised medical and wage-replacement benefits in exchange for giving up her right to bring a legal action against HCA Inc. and its affiliated employers and their employees. However, when Gonzalez was injured and attempted to claim benefits under the Plan, she was told that she was a "PRN" or "pool" employee who did not qualify for medical or other benefits under the Plan. In other words, she did not qualify as an employee participant under the Plan. Any consideration for Gonzalez was wholly illusory.

In contending that the parties' mutual agreements to arbitrate their disputes furnished the requisite consideration, Rio Grande misconstrues the nature of the agreement and election signed by Gonzalez. Gonzalez did not agree to arbitrate her disputes with Rio Grande in exchange for Rio Grande's agreement to arbitrate its disputes with her. Simply put, the agreement is not a mutual agreement to arbitrate the parties' disputes. Rather, under the express language of the election, Gonzalez agreed to arbitrate her disputes in exchange for being allowed to participate in the benefit Plan established by Rio Grande. However, according to the record evidence, she was never eligible to participate or receive benefits.

Rio Grande's promise that Gonzalez could participate in the Plan if she agreed to arbitrate any disputes was illusory. "When illusory promises are all that support a purported bilateral contract, there is no contract." *Light v. Centel Cellular Co.*, 883 S.W.2d

13

642, 644-45 (Tex. 1994) ("Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment."). In other words, there was no mutuality of obligation because Rio Grande's agreement to allow Gonzalez to participate in the Plan was illusory from the inception of the purported contract. *See Tenet Healthcare v. Cooper*, 960 S.W.2d 386, 388-89 (Tex. App.–Houston [14th Dist.] 1998, pet. dism'd w.o.j.). *Cf. Celestino v. Mid-American Indem. Ins. Co.*, 883 S.W.2d 310 (Tex. App.–Corpus Christi 1994, writ denied) (construing an insurance policy that offered no coverage).

Moreover, the Texas Supreme Court's discussion of estoppel in *Perry Homes v. Cull* is appropriate here insofar as the evidence in this case shows that Rio Grande simultaneously denies that the Election and Plan is applicable to Gonzalez, yet seeks to apply that same Election and Plan to Gonzalez in order to force her to arbitrate her disputes. *See* 258 S.W.3d at 593.

Rio Grande's argument that Gonzalez received "participation and coverage" under the Plan is nonsensical at best and disingenuous at worst. Although Escobedo testified that employees receive "immediate coverage" when they sign the Plan, the uncontradicted evidence adduced from Gonzalez is that she was not such an employee. The record is wholly devoid of any evidence that Gonzalez was allowed to participate in the Plan or that she received coverage under the Plan. According to the record evidence, Gonzalez was a "pool" or "PRN" employee who was not eligible to participate in or receive benefits under the Plan. Rio Grande has adduced no evidence that suggests otherwise.

Finally, Rio Grande contends that, if there is any failure of consideration based on Gonzalez's failure to receive benefits under the Plan, it is a partial failure, given consideration provided by the mutual promises to arbitrate and Gonzalez's ability to

14

participate in the Plan, and thus rescission of the agreement is not allowed. We have already determined that the agreement at issue lacked consideration, rather than suffered a failure of consideration. Accordingly, we need not further address this issue herein. *See* TEX. R. APP. P. 47.1, 47.4; *Belew v. Rector*, 202 S.W.3d 849, 854 n.4 (Tex. App.–Eastland 2006, no pet.) (distinguishing failure of consideration and lack of consideration).

## IV.  Conclusion

The Court, having examined and fully considered the petition for writ of mandamus and response thereto, is of the opinion that Rio Grande has not shown itself entitled to the relief sought. Accordingly, the stay previously imposed by this Court is LIFTED. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). Rio Grande's motion to dismiss and for costs is DENIED. The petition for writ of mandamus is DENIED. *See id.* 52.8(a).

Per Curiam

Memorandum Opinion delivered and filed
this the 25th day of February, 2009.